Jody Corrales appearing for repellent, John Barbush appearing for appellee. Okay. Ms. Corrales, would you like to reserve some time for rebuttal? Yes, Your Honor. Five minutes for rebuttal. Okay. Please go ahead. Thank you. So this is your classic case of a failed business venture that lands its principal in bankruptcy, except for, in this case, the creditor, the creditors. The creditor that contributed to the demise of the business was actually the creditor who prevailed in the adversary proceeding, and that is what I'm here today to remedy in that there was an evidentiary hearing. There was a trial on Section 523A4 embezzlement, but there is more to the story than whether or not there were funds embezzled. My client didn't embezzle any funds. It should be noted for the record that the plaintiff was a 10% owner in the business and had access to the books and records, and I can go into the facts of the case, but I think here today the main legal argument is that the amount of damages was wrongly decided or it was not even decided based on the proof of claim that was filed in the business case, and I did file a motion for a request for judicial notice for the panel to review to show that the amount of the judgment is incorrect. We showed us the proof of claim, but isn't there evidence in the record in this case that supports the $477,000 figure? There's an accounting from Mr. Flacco's company that has that figure in it, correct? But that accounting was incomplete, and that evidence was attempted to come out at trial because the amount was wrong because there was supposed to be a discount for the bathroom renovations that ProTix contributed to the enterprise, and so that amount, that $477,000, was just an incomplete picture of the full amount of damages as reflected in the proof of claim that DCF itself filed in ProTix's bankruptcy case. You're making an argument about a finding of fact, aren't you? Yes and no, because there is a legal document that's on record showing that the amount truly owed is $399,113. Was that part of the trial record? I don't believe it was. So you didn't bring it up at the trial? Well, I did bring up the damages issue, yes, because we believe there are no damages at all because the plaintiff in this case demonstrated unclean hands throughout this whole proceeding and throughout the business dealings, and we believe that there's no damages at all because had the business merger gone through like it was intended to do, and had the plaintiff in this case not intercepted those funds of the merger, then there'd be no money owed. So in this case, it's a case about a creditor not only intercepting a business deal, but then also getting a half a million dollar judgment on top of that. So you're saying the creditor had some duty to your client to participate in the deal that your client negotiated?  But wasn't the basis of the deal that you were going to deliver DCF to ETICS, and that was kind of the basis of the deal? So they would have had to cooperate, right? Well, yes and no, because it was not just DCF. There were other clients also that the protics had in addition to DCF. Was DCF and another related entity and then somebody else? Right, there were other promoters. But wasn't this part of the claim that the protics trustee settled this? So how can you raise it if it was already settled? Well, it was settled, but I think the legal doctrine of unclean hands can still be raised. Whether it be through a Rule 60B or a Rule 60 motion after the fact, I mean, I just think that the panel can do something to remind us. But for a Rule 60, doesn't it have to be something that's newly discovered? I mean, it wasn't newly discovered, was it? You knew about it. Well, I didn't know about it. But your client knew about it, right? Potentially, yes. I mean, there's no excuse that there were multiple attorneys involved in this, but that's not an excuse. I mean, my client obviously should have had notice of the filings in the protics business case, yes. But that still doesn't make it right. So what I'm asking the panel to do today is to remand the case back to the trial court for a determination on the true amount of damages. I mean, we know that it's not $477,000. We know that. So what is it? We say it's zero. At the very least, it should be $399,113. I mean, there has to be something that can be done to make it right. Also, the elements of embezzlement have to show that the debtor had a frame of mind to defraud or deceive, and there was adequate evidence in the record and at trial that he was just operating the business, that he did it. Isn't that just a continuation of the question Judge Brand asked? I mean, aren't you arguing the factual finding again? Because there was evidence of personal use of the funds too. Right. I mean, yes and no. I mean, I am arguing the factual findings. And I guess, I mean, you know, I'm in a difficult situation here because it's hard to overcome those factual findings. But like I said, there has to be something done here. A creditor has a duty to submit correct and accurate documents and positions in a bankruptcy case. I mean, how could the creditor just say, yes, it's $477,000, but then in another case, you know, filed after the bankruptcy case, this bankruptcy case was filed. So this bankruptcy case was filed November 2nd of 2018. The proof of claim here was filed November 8th of 2018. So after this bankruptcy case was filed. I mean, does a creditor not have an obligation to truthfully and accurately present? That's an offset. I mean, what you're arguing is an offset. So generally my understanding of how it works is, you know, the creditor approves its damages. That's the $470,000 plus. And then you say we should equitably deduct that. That's on the defendant. That's an affirmative defense. And I don't even think it's an equitable deduction. I think it's in black and white. I mean, if they're saying that their claim is $399,000, I mean, that's what the claim is. It's not even asking for an offset or a deduction. It's based on their own writings, their own filings. Are you saying that somehow the creditor is stopped or barred or something from claiming other than the $399,000? If so, what's the legal basis for saying that they can't ever claim anything else? Absolutely. And I think you're right. It is an estoppel argument, a judicial estoppel argument. You can't file and say one thing in one bankruptcy case or one legal proceeding and then turn around in a separate legal proceeding afterwards and state something entirely different. I mean, you should be bound by the initial filing and the initial claims that you filed. So they couldn't ever admit their claim in the other bankruptcy case? I mean, at this point, no, because there's already been a distribution and the estate is closed. Well, and they wouldn't, right? Because didn't they withdraw their claim? Exactly. They withdrew their claim. So I guess I'm not sure what the legal import is of that and the estoppel argument. That case stopped in terms of adjudication of their claim. I understand that. But just because you don't, a creditor or any party doesn't benefit from something they file in court doesn't mean that they're not bound by whatever they file in that proceeding. And to go back, was this raised in front of the bankruptcy court, the offset, the reduction? Not the $800,000, but the bathroom? No, it was not. Well, the bathroom issue was raised, and there was a great amount of time spent during trial discussing the bathroom renovations. And the plaintiff's principal testified that they were not done, but he was very vague in explaining that there was some monies contributed to the bathroom renovation. But the exact amount of the offset was not raised. The $78,750.70 was not raised because, admittedly, I only discovered it in preparing for the briefing of this case of the appeal. So it was not specifically raised, no. And, Your Honors, I think I'll reserve the rest of my time for rebuttal. Okay, very good. All right, Mr. Barbusch. I think you're still muted. I believe from listening to the questions you've already asked, you've already read my response brief and know it very thoroughly, so I'm not going to regurgitate it to you as you've asked us to be brief in this presentation. I do want to respond to Ms. Corrales' assertion that somehow the proof of claim and the email that was the basis for that would somehow be an automatic offset as if it's some bright-line rule. She didn't present this panel with any authority that says that ProTix bankrupts. The proof of claim filed in that bankruptcy, which was later than withdrawn, is somehow binding in this adversary proceeding, had they raised it in front of Judge Wasling during the trial. There's no authority that says that DCF was bound by a withdrawn claim. The assertion that DCF has somehow done something untoward or improper is also offensive, given the fact that Mr. Floco himself, in the ProTix bankruptcy, listed DCF's claim as the $477,000-plus in collected ticketing money that his company did an accounting for, admitting that it had been collected but not turned over. That ignores the adjustment aspect of the offset, though. So is it your position that there is not evidence in the record that work was done on the bathrooms generating a charge to your client of the $70,000 and change? The evidence presented at trial, Your Honor, was that if you look at trial Exhibit 1, the inducement for my client to use ProTix as its exclusive ticketing company was the promise of the renovation of the bathrooms. Therefore, factually, the trial record reflects that my client was entitled to the renovation of the bathrooms and its collected ticketing money. So this offset language that she's getting at, she's trying to act like it's a done deal if it would have been presented at trial, but that's not true. The fact was the record demonstrates, because the contractor that was hired to do the bathrooms also was a creditor in the ProTix bankruptcy, which was administered, and that evidence was presented to Judge Wansley, as well as the fact that because ProTix breached its contract and failed to make the payments under the contract, DCF paid for the bathrooms and the renovations to get them completed. So my client has been damaged more than the $477,000 that was collected in ticketing money and then embezzled. It also had to pay for the bathrooms that ProTix agreed it would take care of as part of the inducement to get the exclusive ticketing. But that's not embezzlement against Mr. Flacco. Correct, but the fact that she's arguing that there would have been an offset to begin with is a fallacy. My client was entitled to the collected ticketing money, and under their agreement, Trial Exhibit 1, the renovated bathrooms. There's no document, no testimony that Mr. Flacco or ProTix was ever entitled to an offset for any amount of money put into the bathrooms. So the fact that my client sent an email to Mr. Flacco before this was handed over to attorneys for litigation saying, hey, if you pay me this, where he gave him an offset for the amount that was paid, the $78,000 towards the bathroom under the contract that ProTix entered with TerraCo as the contractor, isn't anything that was legally binding on the evidence in this case. And the fact that Ms. Corrales was unaware of that document, even though it was listed as an exhibit, and even though prior counsel had listed it and attached it as an exhibit to their motion for summary judgment, and the fact that Mr. Flacco had the proofs of claims and access to them, this is all why we don't allow retrials on appeals for points that were not presented to the trial court. But why did your client file that claim for the $399,000, which allows this offset in the ProTix case? How did that happen? I cannot recall the exact details on it. I believe there was discussion with my Arizona counsel about filing the amount with the email that was sent so that we were, if there was a contested claim, we weren't being shown as somehow trying to be anything but what he had sent. That's all I can answer as to that. I can't remember the exact specifics. But again, this is something that should have been raised to Judge Wansley. It was information and documentation that was in their possession and control, and in fact had been used in the adversary proceeding attached to the motion for summary judgment. And, you know, there's no statutory authority or any case law that says that a party is bound by their proof of claim. You have an adversary proceeding trial to determine the damages, which is exactly what happened here. And the amount of damages that Judge Wansley awarded in the judgment is the exact amount that Mr. Flacco admitted was the amount collected and not turned over to DCF. Okay. Anything further? I would just add that Judge Wansley never precluded any evidence or witnesses during the two-day trial, and that as I've set forth in my brief, her factual findings are supported in the record. And the fact that Mr. Flacco disagrees with them does not change the fact that both parties agree that Judge Wansley applied the law, that both parties agreed applied to embezzlement, and whether or not there was a true consignment relationship between the parties. Okay. Any questions from the panel? No, thank you. No, thank you. Thank you. All right. Very good. Thank you. Okay. Ms. Corrales, back to you. You've got, let's see, a little under six minutes. Please go ahead. Thank you, Your Honor. I just wanted to note for the panel that Rule 60B allows for a reversal or an amendment of a judgment for any other reason justifying relief from the operation of the judgment. So it doesn't have to be newly discovered evidence. It can be for any other reason justifying relief from the operation of the judgment. But that would be a motion made to the trial court, right? That wouldn't be the appeal. It would. I mean, I think we can fast-track it and just have it remanded back for a damages calculation because I don't think that was done. I don't think, I think it was just too narrowly focused on whether or not this was the consignment relationship and the bigger picture of whether there was fraud or embezzlement and what the damages were were never really concluded or thought about or adequately addressed. I mean, it's a 22-page opinion that focuses on the elements of a consignment and the fraud aspect but doesn't really talk about how they got to that $477,000 figure other than it was based on the amounts that were still in the account or that were not turned over at a certain point in time. And I admit that it's Mr. Flockel's responsibility to look at all the documents filed in all of the bankruptcy cases and, you know, it probably should have been raised at the lower court. But I urge the panel to do what it can to make sure that justice perseveres here because that's what we're here to do is to uphold the law and to see that justice prevails. And that's what I ask the panel to do today. Thank you. Thank you. Any more questions from the panel? No, thank you. No, thank you. Okay, thank you both. The matter is submitted.
judges: Faris, Brand, Spraker